# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PUEBLO OF ZUNI, on behalf of itself
and all others similarly situated,

    Plaintiff,

v.               Civil No. 01-1046 LH-LFG

UNITED STATES OF AMERICA;
TOMMY THOMPSON, Secretary of t he
United States Department of Health and
Human Services; and
MICHAEL H. TRUJILLO, Director of the
Indian health Service, United States
Department of Health and Human Services,

    Defendants.

## MEMORANDUM OPINION AND ORDER ON
## MOTIONS RELATING TO INTERVENTION

THIS MATTER was recently assigned to the undersigned, and a status hearing was held

on October 3, 2005.  In this Memorandum Opinion and Order, the Court addresses the following

motions:

> "   Expedited Motion to Intervene, Establish Separate Classes, Appoint Interim
> Counsel and Extend Class Certification Discovery Period, filed May 21, 2005 by
> Tunica-Biloxi Tribe and Ramah Navajo School Board (**Doc. 54**);
>
> "   Plaintiff's Motion to Strike Intervenors' Reply in Support of Motion to Intervene,
> filed July 8, 2005 (**Doc. 86**);
>
> "   Defendants' Motion to Compel Service of Unredacted Reply in Support of Motion
> to Intervene, filed July 1, 2005 (**Doc. 84**);
>
> "   Plaintiff's Motion to File Surreply to Respond to Consolidated Reply in Support of
> Motion to Intervene, filed July 8, 2005 (**Doc. 87**).

**General Background**

This is a putative class action for money damages brought under the Indian Self-Determination and Education Assistance Act of 1975 ("ISDA"), as amended, 25 U.S.C. § 450 et seq. and the Contract Disputes Act, 41 U.S.C. § 601 et seq ("CDA").[1]  The lawsuit involves claims made under certain annual contracts between the government and the Plaintiff and other Indian Tribes represented by the putative class.

Plaintiff contends that Defendants violated the ISDA by (1) failing to properly calculate the Tribes' "contract support cost" requirements, (2) failing to pay the properly calculated amounts required to be paid, and (3) failing to fully pay even the Tribes' undercalculated "contract support cost requirements.   Plaintiff seeks to recover money damages for Defendants' failure to pay the full contract support costs required to be paid under the ISDA and under contracts between the Indian Health Service and the Plaintiff (and putative class members) entered into pursuant to the ISDA.  There are two types of "contract support costs" at issue in these cases: direct program costs and indirect costs.[2]

This case (hereinafter "Pueblo of Zuni," or "Zuni") is one of three class actions -- one already certified as a class and two putative classes, all alleging breach of contracts awarded

---

[1]  Self-determination contracts are contracts "entered into . . .between a tribal organization and the appropriate Secretary for the planning, conduct, and administration of programs or services which are otherwise  provided to Indian tribes and their members pursuant to Federal law[.]"  25 U.S.C. § 450b(j).

[2]  "Direct program costs" are the direct program expenses for the operation of the Federal program that is the subject of the contract.  "Indirect contract support costs" are "administrative or other expense[s] related to the overhead incurred by the tribal contractor in connection with the operation of the Federal program, function, service or activity pursuant to the contract[.]"  25 U.S.C. § 450j-1(3)(A)(i) & (ii).

pursuant to the ISDA.  The certified class action is <u>Ramah Navajo Chapter v. Lujan</u>, 112 F.3d

1455, Civil No. 90-057 LH/KBM, on remand <u>Ramah Navajo Chapter v. Babbit</u>, 50 F.Supp. 2d

1091 (D.N.M. 1999)[3] and <u>Ramah Navajo Chapter v. Norton</u>, 245 F.Supp. 2d 1303 (D.N.M.

2002) (hereinafter "<u>Ramah.</u>")  Applicant-Intervenors are plaintiffs in <u>Tunica-Biloxi Tribe of</u>

<u>Louisiana and Ramah Navajo School Board v. U.S. et al</u> (hereinafter "<u>Tunica-Biloxi</u>").

     The allegations set forth in these cases encompass distinct categories of underpayment and

separate classes of contractors.   For example, "miscalculated rate claims" allege that the agency

used an incorrect methodology to calculate what was owed for "contract support costs." The

other type of claims are called "shortfall claims," in which the agency calculated correctly the

amount owed for the contract cost requirement, but failed to pay that amount in full.  To further

complicate the litigation landscape for these cases, both of these claims are brought in connection

with "lump sum years," – i.e., claims which arose for years before Congress limited amount of

funds available to agency to pay the contracts, and in connection with "cap years," years in which

congress capped the agencies' appropriations to pay "contract support costs" by imposing a limit

on the collective amount which could be paid to all contracting Tribes for their contract support

costs.  The parties in <u>Ramah</u>, which is considerably further along on the litigation track than the

instant case, have settled both the shortfall and miscalculated rate claims for the lump sum years.

     Applicant-Intervenors (hereinafter, "Intervenors") represent that the prosecutions of

---

[3]  The district court had granted summary judgment to defendants, finding that the formula
applied by the Bureau of Indian Affairs ("BIA") used to calculate indirect contract support costs
incurred while providing services under ISDA contracts conformed to the applicable statutes.
Indirect costs are those reasonably necessary to operate the contracted program or programs.
The Tenth Circuit reversed this holding in <u>Ramah Navajo Chapter v. Lujan</u>, 112 F.3d 1455 (10th
Cir. 1997), finding that the methodology employed by the BIA was illegal.

Ramah, Pueblo of Zuni, and Tunica-Biloxi were initially governed by joint prosecution agreements which Zuni counsel later abrogated, resulting in this motion. However, Intervenors have produced no evidence of such agreements, nor do they provide any viable reasons for granting the motion to intervene on that basis.

### Procedural Background

The Pueblo of Zuni case was filed on September 10, 2001, alleging that IHS repeatedly failed to pay the contract support cost ("CSC") that must be paid annually to contractors under 25 U.S.C. § 450j-19a)(2). This case includes both shortfall and miscalculation types of claims. Fourteen months after Zuni was filed, Intervenors filed a separate case in this district, alleging primarily miscalculated rate claims against IHS (Civil No. 02-1465 JP/LCS). On November 26, 2002, the Tenth Circuit ruled in favor of the Government in a comparable suit, Cherokee Nation of Okla, et al v. Thompson, 311 F.3d 1054 (10th Cir. 2002) ("Cherokee I"). As a result of this adverse ruling, Intervenors voluntarily dismissed their original action and on December 9, 2002 refiled the complaint in the United States District Court for the District of Columbia (Civil No. 1:02CV02413 RBW). See Deft's Ex. A (MDL Br. at 2 n.1). While the parties in Tunica-Biloxi were engaged in jurisdictional discovery, that case was stayed pending the United States Supreme Court's decision on the Cherokee appeal.

On March 1, 2005, in Cherokee Nation v. Leavitt, 125 S.Ct. 1172 (2005) ("Cherokee II"), the Supreme Court reversed the Tenth Circuit's ruling in Cherokee I, finding the Government was liable in money damages for failing to pay the full amounts specified in the Tribe's contracts w/

IHS.[4]  As a result of the Supreme Court's ruling in <u>Cherokee II</u>, Intervenors now seek to move the case back to this district.

**Discussion**

After reviewing the pleadings and exhibits in the above motions, and based on the following reasons, the Court finds that the motion to intervene will be denied, and that therefore the other matters connected to this motion need not be addressed.

## I.        **Motion to Intervene**

Intervenors move to intervene as parties plaintiffs under Rule 24 of the Federal Rules of Civil Procedure in order to litigate the "miscalculation claim" pled in the second cause of action, and to appoint interim counsel pursuant to Rule 23(g)(2).

Intervenors do not specify in their motion whether they seek intervention of right under Fed.R.Civ.P. 24(a), or permissive intervention under Rule 24(b), although their arguments focus on the former.  An applicant may intervene as of right under Rule 24(a)(2) if: (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may as a practical matter be impaired or impeded; and (4) the applicant's interest is not adequately represented by existing parties.  <u>Coalition of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior</u>, 100 F.3d 837, 840 (10th Cir. 1996).[5]  Federal courts retain discretion to determine when intervention is

---

[4]  <u>Cherokee I and II</u> addressed only claims pertaining to "lump years," which was the basis for the settling of such claims in <u>Ramah</u>.

[5]  The 1966 amendment to Rule 24(a)(2) changed the focus from a showing by the intervenor that representation was or may be inadequate, to intervention as of right where the other conditions of the Rule 24(a)(2) are satisfied *unless* the applicant's interest is adequately represented by existing parties.  <u>See</u>, Wright, Miller & Kane, Federal Practice and Procedure,

5

appropriate.   <u>Washington Elec. Co-op., Inc. v. Massachusetts Mun. Wholesale Elec. Co</u>., 922 F.2d 92 (2nd Cir. 1990).

Intervenors advance several reasons for why they should be allowed to intervene in this case:

" counsel's expertise and success in prosecuting miscalculation claims, pointing to their success in the <u>Ramah</u> case;

" <u>Zuni</u> counsel have not adequately or completely framed the miscalculation claims: this category of claims "as summarily pled" in <u>Zuni</u> omits allegations "concerning the manipulations of carry-forward adjustments that further depress rate calculations . . . [and] does not make any claim against the Secretary of Interior or the Director of the National Business Center who set rates and determine carry-forward adjustments for IHS and are necessary and indispensable parties."  Mot. at 3[6];

" further, the <u>Zuni</u> plaintiff appears to have not exhausted administrative remedies prior to suit regarding them miscalculation claims;

" <u>Zuni</u> counsel have elevated the interests of individual clients to the detriment of the class;

" the <u>Zuni</u> First Amended Complaint contains no claim or request for equitable relief in the form of an injunction to correct the flawed rate-making system; and

" the outcome in this action will determine the construction given the mandatory model agreement for contracts binding all ISDA contractors.

---

Civil 2d § 1909.

[6]  More detail on "carry forward claims" can be found in the proposed Complaint in Intervention, ¶¶ 24-26.

However, none of these reasons either alone or in combination, persuades the Court that the Intervenors have met the requirements of Rule 24(a)(2).

A.    <u>Interest Relating to Property or Transaction</u>

To intervene as a matter of right, Intervenors must show they have an interest in the proceedings which is "direct, substantial, and legally protectable." <u>City of Stilwell, Okl. v. Ozarks Rural Elec. Co-op. Corp</u>. 79 F.3d 1038, 1042 (10th Cir. 1996).  Parties concede that the claims raised in <u>Tunica-Biloxi</u> are substantially the same as those Intervenors would raise by intervening in this case.  Intervenors view intervention as a way to prevent a multiplicity of suits where common questions of law or fact are involved.  <u>See</u>, <u>Washington Elec</u>., 922 F.2d at 97 (2nd Cir. 1990) (citing <u>Reich v. Webb</u>, 336 F.2d 153, 160 (9th Cir.1964), <u>cert. denied</u>, 380 U.S. 915 (1965).  However, it is too late to *prevent* a multiplicity of suits where Intervenors proceeded to file a separate action in this district over a year after this action was filed, and then moved the case to another forum to avoid what seemed to be a foreseeable adverse outcome.  Another judicial forum has already invested considerable time in the matter, and the Hon. Reggie B. Walton, the presiding judge in the <u>Tunica-Biloxi</u> case in the District of Columbia, has already made a number of dispositive rulings which would be essentially relitigated should the Intervenor's motion be granted.

While the claims of the Intervenors' and those of the plaintiffs in the <u>Pueblo of Zuni</u> case are substantially similar, each case involves contracts with different tribes and therefore different terms and conditions with their respective contracts.  Further, neither of the plaintiff groups have been certified as a class, although those motions are expected to be forthcoming at the end of discovery.  The resulting complexity involved in different contractual agreements balances out any

consideration of potential judicial economy.  Intervention is denied when it "may promote judicial economy . . . but at the expense of rendering the single lawsuit more complex and protracted." Oneida Indian Nation of Wisconsin v. New York, 102 F.R.D. 445, 449 (N.D.N.Y.1983).  The Court finds in its discretion that such protraction will occur here, and is not convinced that the plaintiffs in the Tunica-Biloxi case have sufficient interest in the subject matter to warrant intervention.

B.      Impairment of Interest

       Under Rule 24, it would not be enough for Intervenors to claim an interest relating to the property or transaction which is the subject of this action – they need to show that the disposition of this case would "as a practical matter impair or impede" their ability to protect that interest. Intervenors argue that impairment is sufficiently shown if there would be a stare decisis effect of the Court's judgment in this case.  See Utah Ass'n of Counties v. Clinton, 255 F.3d 1246, 1254 (10th Cir. 2001); Sierra Club v. Espy, 18 F.3d 1202, 1207 (5th Cir. 1994) (stare decisis effect of decision is sufficient potential impairment to satisfy requirements of Rule 24(a)(2)).

       However, the stare decisis argument is unavailing, since litigation in both cases has been underway for some time, although discovery is proceeding in this case while the case is presently stayed in Tunica-Biloxi.  At the hearing on this matter, Intervenors informed this Court that they have filed a motion to reopen the case before Judge Walton in the District of Columbia.  The fact that a ruling on that issue is not happening fast enough for the Intervenors does not lend support to the stare decisis argument.  Moreover, none of the putative classes have been certified.  As Plaintiff points out, just as the Zuni Plaintiff is not bound by the rulings in Tunica made in another district court, the Tunica plaintiffs cannot claim to be bound by the rulings of this Court on the

Zuni contracts.  See, e.g., Chevron USA Inc. v. School Bd. Vermilion Parish, 294 F.3d 716, 729

(5th Cir. 2002) (rulings made by district court regarding claims made by putative class had no

effect on the rights of individual class members where class had not been certified); Aguilera v.

Pirelli Armstrong Tire Corp., 223 F.3d 1010, 1013 n.1 (9th Cir. 2000) ("When a motion is

maintained against an uncertified class, only the named plaintiffs are affected by the ruling. There

is no res judicata effect as to unnamed members of the purported class") (citation omitted).

      Again, the fact that Intervenors presently are litigating similar claims in another forum of

their own choosing colors the Court's consideration of the merits of this motion, and weakens any

support provided by the cases on which they rely, since the parties seeking to intervene in those

cases did not already have a case pending in their claims in another federal forum, e.g., Coalition

of Arizona/New Mexico Counties for Stable Economic Growth v. Department of Interior, 100

F.3d 837 (10th Cir. 1996) (commercial wildlife photographer sought to intervene in

environmental case; Washington Elec., 922 F.2d at 97 (2nd Cir. 1990) (court denied intervention

to public service company in action brought by electrical cooperative); Bromley v. Michigan

Educ. Ass'n-NEA, 178 F.R.D. 148 (E.D.Mich.,1998) (unnamed class members allowed to

intervene as class representative prior to adjudication on merits of motion for class certification).

Intervenors claim that major avenues of discovery relating to class certification will be foreclosed

regarding the miscalculation claims.  However, they do not explain either how they know what

the scope or extent of discovery will be in the Zuni case, or what prevents them from proceeding

with discovery on their own (except for the fact that Judge Walton has not yet ruled on their

motion to reopen).

C.      Inadequate Representation

Rule 24(a) provides that parties are not entitled to intervene if their interest is adequately represented by existing parties. Intervenors argue that the interests of the <u>Tunica-Biloxi</u> plaintiffs are not adequately represented by the existing parties, essentially because counsel in <u>Pueblo of Zuni</u> are inadequate.[7] Mr. Lloyd B. Miller and his law firm, who represent the Plaintiff in this case, acted as counsel for the Cherokee Nation in that suit. Intervenors claim that they are not represented in this action because the claims of the Zuni plaintiff are not comprehensive enough. The thrust of this argument is that current <u>Zuni</u> pleadings omit essential elements of the miscalculation claim, such as the claim for carry-forward injunctive relief, which has not been raised by parties other than the applicants.

Representation is adequate "when the objective of the applicant for intervention is identical to that of one of the parties." <u>Bottoms v. Dresser Indus., Inc.</u>, 797 F.2d 869, 872 (10th Cir.1986), <u>cited in</u> <u>Stilwell</u>, 79 F.3d at 1042. Assuming the <u>Tunica</u> plaintiffs share the same interest in the subject matter sufficient to meet Rule 24 requirements, this is not a situation where the <u>Tunica-Biloxi</u> plaintiffs are either not being represented at all, or where the positions of the <u>Zuni</u> plaintiff is adverse to them. Intervenors are required to shoulder only a "minimal" burden in showing inadequate existing representation. <u>Sierra Club</u>, 18 F.3d 1202. However, there must still be "some tangible basis" for a claim of inadequacy. <u>Public Service Co. of New Hampshire v. Patch</u>, 136 F.3d 197, 207 (1st Cir. 1998). Notwithstanding issues which the Intervenors apparently have with the way litigation is being pursued in this case by <u>Zuni</u> counsel, plaintiffs in the <u>Tunica-Biloxi</u> case share the same general objective regarding payment of tribal contracts

---

[7]   The unredacted reply can best be describe as an attack upon <u>Zuni</u> counsel (Doc. 80, filed under seal). It was served only on Plaintiff. Defendants were served a redacted version, resulting in a motion to compel service of the unredacted reply. <u>See</u> discussion, below.

under a miscalculation theory, even if the contract terms and conditions are distinct.

The motion to intervene should be denied for other reasons. Judge Walton has already made rulings on some of the claims in the <u>Tunica-Biloxi</u> case, some of them adverse to Intervenors. For example, Judge Walton has dismissed claims for payments in years prior to fiscal year 1995 and after fiscal year 2001 for failure to exhaust under the Contract Disputes Act; dismissed certain individuals who were found by the <u>Tunica-Biloxi</u> court to be merely agents of the remaining defendants in that case, and dismissed claims for relief based on an alleged breach of trust. <u>See</u> Deft's Ex. B at 15, 36-37 & 40 (Amended Memorandum Opinion from the U.S. District Court for the District of Columbia). The proposed Complaint in Intervention resurrects these dismissed claims. <u>See</u> Complaint in Intervention, Attached as Ex. A (Doc. 54),  at ¶¶ 12, 14, 35- 48.

The other reason is that potential forum shopping by the Intervenors should not be condoned. <u>Cmp</u>.,intervenors<u>Coalition of Arizona/New Mexico Counties</u>, 100 F.3d at 844 (referring to "forum shopping" as a most disfavored practice, while noting in dicta that party making charge of forum shopping appeared to be forum shopping itself, since it could have applied to intervene in an action already pending in Arizona instead of bringing the action at bar in New Mexico). It is not unforeseeable that after switching forums once already to avoid what seemed to be an adverse ruling by the Tenth Circuit in <u>Cherokee I</u>, Intervenors would seek to avoid the consequences of these dispositive rulings and to relitigate these issues.

Based on these findings, Intervenors' motion to intervene is denied under Rule 24(a).

## II.    Permissive Intervention

Permissive intervention under Federal Rule of Civil Procedure 24(b) "is a matter within

the sound discretion of the district court . . . ." <u>Arney v. Finney</u>, 967 F.2d 418, 421 (10th Cir.

1992). Intervention under Rule 24(b) is guided by the Court's discretion, considering in part

whether the intervention will unduly delay or prejudice the adjudication of the rights of the

original parties.  Granting the motion to intervene under Rule 24(b) would result in unnecessary

delay and prejudice to Defendants who would again have to defend and relitigate certain issues

which have already been dismissed in another forum.  It would mean adding new parties to the

litigation, including a new federal agency, the United States Department of the Interior, further

complicating the proceedings in this case.  Therefore, the motion to intervene is denied under

Rule 24(b) as is Intervenors' motion to appoint intervenors' counsel as interim counsel pursuant

to Rule 23(g)(2).

**III.    Untimeliness of Motion to Intervene**

Under Rule 24, a timely motion to intervene is required whether intervention is sought

either as of right or permissively.  While the rule does not contain specific factors to determine

timeliness, the Court determines whether an application is timely in the context of the facts in a

particular case.  <u>Nat'l Association for the Advancement of Colored People v. New York</u>, 413

U.S. 345, 365 (1973) ("Timeliness is to be determined from all the circumstances").  Some factors

the Court may consider are: "the length of time since the applicant knew of his interest in the case,

prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual

circumstances." <u>Utah Ass'n of Counties v. Clinton</u>, 255 F.3d at 1254.

Defendants contend that the motion is untimely because Intervenors waited four years to

file this motion since the time the <u>Zuni</u> case was filed.  Intervenors point out that even though

<u>Zuni</u> was filed in September 2001, it was stayed in December 2001 (Doc. 8) pending the

12

resolution of <u>Cherokee</u>, which was decided recently in March 2005 (see Doc. 32, Order Lifting

Stay, Mar. 18, 2005).    Therefore, Intervenors argue, intervention is timely since it was filed

before the date set for Defendants in <u>Zuni</u> to file a responsive pleading.

      I need not make a determination as to the timeliness of the motion, since the motion to

intervene is denied on the merits.

**IV.     Plaintiff's Motion to Strike Intervenors' Reply in Support of Motion to Intervene**

      **(Doc. 86)**

      Plaintiff seeks to strike the Intervenors' reply because the pleading and certain attached

exhibits contain what Plaintiff alleges is privileged information, and because Intervenors did not

properly seek the Court's permission before filing the pleading under seal.    Plaintiff relies on the

privilege relating to the "joint prosecution" privilege," or "common interest privilege,"  which

allows counsel for clients facing a common litigation opponent to exchange privileged

communications and attorney work product in order to adequately prepare their respective cases

without waiving either privilege.    <u>Citizens Progressive Alliance v. Bureau of Indian Affairs</u>, 241

F.Supp. 2d 1342, 1363 (D.N.M. 2002) (citation omitted); (N.M. Rule of Evid. 11-503(B))

(codifying the "common interest" privilege).    Intervenors question whether Tenth Circuit has

recognized this privilege, <u>see</u> <u>Grand Jury Proceedings v. U.S.</u>, 156 F.3d 1038, 1042-43 (10th Cir.

1998) (outlining a "joint defense" privilege), and point to various procedural defects in Plaintiff's

motion.

      Because the unredacted version of the reply has been filed under seal (as mentioned

previously, <u>see</u> n.7, <u>supra</u>), it is difficult to see where Plaintiff has been prejudiced by the filing of

the unredacted document.    I need not determine whether the motion to intervene is timely, as the

issue is rendered moot because of the Court's ruling on the merits of the underlying motion. Therefore, the motion to strike is therefore denied as moot.

**V.      Defendants' Motion to Compel Service of Unredacted Reply in Support of Motion to Intervene (Doc. 84)**

Defendants received a redacted version of the reply to the motion to intervene, and seek to compel service of the unredacted reply.  They object to the Intervenors' filing the reply under seal without first obtaining the Court's permission to do so, and claim that failure to use proper procedures has resulted in an inappropriate ex parte communication with the Court.

This issue is also moot, in light of the Court's disposition of the motion to intervene.

**VI.     Plaintiff's Motion to File Surreply to Respond to Consolidated Reply in Support of Motion to Intervene (Doc. 87)**

Plaintiff filed this motion in anticipation of the Court either striking the Intervenors' sealed reply and permitting Intervenors to file a redacted version of that brief, or striking Intervenors' reply brief in its entirety, the latter of which would eliminate the need for Plaintiff's request. However, Plaintiff's request is eliminated by virtue of the Court's ruling on the underlying motion to intervene. Thus, this motion is also denied as moot.

**THEREFORE,**

**IT IS ORDERED** that the Expedited Motion to Intervene, Establish Separate Classes, Appoint Interim Counsel and Extend Class Certification Discovery Period, filed by the Tunica-Biloxi Tribe and Ramah Navajo School Board **(Doc. 54)** is hereby DENIED on the basis of Rule 24(a) and Rule 24(b) for the reasons described above;

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Intervenors' Reply in Support of Motion to Intervene **(Doc. 86)** is hereby DENIED AS MOOT;

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel Service of Unredacted Reply in Support of Motion to Intervene **(Doc. 84)** is hereby DENIED AS MOOT;

**IT IS FINALLY ORDERED** that Plaintiff's Motion to File Surreply to Respond to Consolidated Reply in Support of Motion to Intervene **(Doc. 87)** is hereby DENIED AS MOOT.

_____

UNITED STATES DISTRICT JUDGE