**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

PUEBLO of ZUNI,

        Plaintiff,

v.                                                 CIV. NO. 01-1046 WPJ/WPL

UNITED STATES of AMERICA;
MICHAEL O. LEAVITT, Secretary of the
United States Department of Health and
Human Services; and CHARLES W. GRIM,
Director of the Indian Health Service,
United States Department of Health and
Human Services,

        Defendants.

**MEMORANDUM OPINION AND ORDER DENYING
PLAINTIFF'S COMBINED MOTION TO COMPEL
DISCOVERY AND TO ENLARGE TIME FOR FILING MOTION**

Plaintiff Pueblo of Zuni has filed a putative class action lawsuit against Defendants under the Indian Self-Determination and Education Assistance Act ("ISDA"), 25 U.S.C. §§ 450-450n, and the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq*. Plaintiff seeks damages for the failure of the Indian Health Services ("IHS") to pay tribal contractors their full "contract support costs" ("CSCs") for several years as required by the ISDA.[1] Plaintiff seeks relief on its own behalf and on behalf of a class of over 300 tribal contractors that had ISDA contracts with IHS.

Plaintiff has filed a combined Rule 37(a)(2)(B) motion to compel the discovery of global CSC shortfall calculations prepared by Ronald Demaray, Associate Director of the IHS Office of Tribal Programs, and to enlarge the time for filing its motion under D.N.M.LR-Civ. 26.6. [Doc. 136]

---

[1] Defendants apparently represented to the Supreme Court that the IHS could face a potential of "up to $100 million" in damages for failure to pay the full CSCs. [Doc. 171 at 3]

Plaintiff also requests that Defendants produce their Area and Headquarters CSC shortfall data in computerized format. Defendants refused to provide information about Mr. Demaray's calculations of the global CSC shortfall on the grounds that it is not relevant and that it is protected by the attorney-client, work product and deliberative process privileges. Defendants refused to provide the Area and Headquarters CSC shortfall data in computerized format because they had already produced voluminous paper documents to Plaintiff as they were kept in the usual course of business.

Defendants have failed to establish that Mr. Demaray's global CSC shortfall calculations are protected by the attorney-client privilege, but they are protected by both the work product doctrine and deliberative process privilege. Further, Defendant complied with Rule 34(b) when it produced the shortfall data in paper format and is not required to produce it in electronic format. Therefore, I will deny Plaintiff's Motion to Compel.[2]

### *Background Facts*

On April 21, 2005 Chief Magistrate Judge Lorenzo Garcia issued a Scheduling and Discovery Order which limited the parties to proceeding with phased discovery, and directed that phase one of the discovery would address the Rule 23 issues of "numerosity, commonality of questions of law and fact, typicality of claims or defenses, and whether the representative parties will fairly and adequately

---

[2] Both parties raised certain procedural arguments in their memoranda. Defendants assert that because Plaintiff failed to challenge Defendants' objections to Plaintiff's written discovery in a timely manner as required by Local Rules 26.6 and 37.1 they accepted the objections and cannot challenge them now. [Doc. 158 at 11-13] Plaintiff argues that Defendants waived their claims of privilege by failing to timely file a privilege log. [Doc. 171 at 18-20] Many courts require a party asserting a privilege to produce a privilege log describing the documents withheld at the time the privilege is asserted. *See Anderson v. Marion County Sheriff's Dept.*, 220 F.R.D. 555, 563 (S.D. Ind. 2004). However, at least one circuit court has held that a party may wait until the court rules upon other objections to the discovery requests before the party must list the documents on a privilege log. *United States v. Philip Morris Inc.*, 347 F.3d 951, 954 (D.C. Cir. 2003). The parties have not cited, and I have not found, any Tenth Circuit authority on this issue. Given my determination that the global CSC calculations are protected by the work product doctrine and the deliberative process privilege, I need not address either of these procedural arguments.

protect the interests of the class." [Doc. 52] Since that time the parties have been involved in class certification discovery.

### *1. CSC Shortfall Data*

IHS makes CSC awards to tribal contractors under their ISDA contracts out of its annual appropriation. It is undisputed that IHS's total allocations for CSC have been insufficient to fund the total amount requested by tribal contractors in each year since at least 1993. Thus, IHS and each tribal contractor had to agree on the amount that IHS would award the contractor for CSC for any given year.

Defendants are required by law to maintain records of the CSC shortfalls. 25 U.S.C. § 450j-l(c). IHS has collected shortfall data from each of its twelve Area Offices since at least 1993. The parties dispute the quality of this data. Defendants have characterized the data as "inherently flawed, unconfirmed data . . . [which is] highly unreliable." [Doc. 158 at 1, 6] Plaintiff attacks this characterization of the data, noting that IHS consistently relied on this data to: (1) calculate and award annual CSC payments to individual tribal contractors; (2) prepare annual reports to Congress on deficiencies in CSC payments; and (3) report to Congress on the amount of CSC payments and shortfall. [Doc. 171 at 3]

### *2. Mr. Demaray's Global CSC Calculations*

Plaintiff sent interrogatories and requests for production to Defendants seeking information about the global CSC shortfall calculations prepared by Mr. Demaray, and also posed deposition questions seeking this information to both Mr. Demaray and his supervisor, Douglas Black, Director of the IHS Office of Tribal Programs. Although Plaintiff admits that difficulties in quantifying class damages are not relevant to the issue of class certification [Doc. 137 at 3], Plaintiff nevertheless

3

asserts that Defendants made the global CSC shortfall calculations relevant by raising them as a defense to class certification. Plaintiff claims that Defendants oppose class certification on the ground that damages for underpayment of the CSCs cannot be ascertained on a global basis, but requires a contract-by-contract examination of each tribal contractor's situation [Doc. 137 at 3, 6, 7 and 23; Doc. 171 at 2], and that they are entitled to rebut this argument by obtaining discovery of the global CSC shortfall calculations. Plaintiff subsequently asserted that the CSC shortfall data is also relevant to the Rule 23(b)(3) class issues of superiority and case management. [Doc. 171 at 7]

Mr. Demaray testified that he prepared the CSC shortfall estimate (or estimates) after the United States Supreme Court handed down its decision in *Cherokee Nation v. Leavitt*, 125 S.Ct. 1172 (2005), on March 1, 2005. There is considerable difference about preparation of the CSC shortfall estimate between the testimony given by Mr. Demaray at his deposition [Doc. 137, Ex. 3] and the testimony contained in his Declaration attached to Defendant's Opposition to Plaintiff's Motion. [Doc. 158, Ex. A] At his deposition, Mr. Demaray did not remember who asked him to prepare the CSC shortfall estimate. [Doc. 137, Ex. 3, 109-10, 113, 129] Mr. Demaray testified that he prepared one estimate and that he prepared the estimate on his own. *Id.* at 113. After lengthy questioning by Plaintiff's counsel, Mr. Demaray finally testified that he had telephone conversations with attorney Jocelyn Beer seeking advice in connection with preparing the estimate. *Id.* at 157-59. When the estimate was completed, Mr. Demaray sent it to Mr. Black, his supervisor. *Id.* at 128-29. Mr. Demaray felt sure that he also sent the estimate to the Office of General Counsel, although he did not remember which attorney he sent it to. *Id.* at 128-29, 136-37, 157.

Mr. Demaray's Declaration contains a much expanded and decidedly different version of events surrounding preparation of the CSC shortfall estimate. In the Declaration, Mr. Demaray

4

testifies that:

a. After the *Cherokee Nation* decision was handed down Mr. Black requested that he prepare the estimate, and on March 2, 2005 he sent an estimate of the total CSC estimated shortfall for years 1994 - 2003 to both Mr. Black and to Jocelyn Beer, his primary attorney contact in the Office of the General Counsel. [Doc. 158, Exhibit A, § 16]

b. He attended a meeting on or about March 10, 2005 with other IHS officials, including Jocelyn Beer, to discuss the Supreme Court's decision in *Cherokee Nation* and it's potential impact on existing and potential litigation. At that meeting they discussed possible defenses that IHS might have in pending and potential CSC litigation. *Id.* at ¶ 19.

c. From March 11 - 29, 2005 he reviewed available CSC shortfall data and took both the advice of counsel and his own opinions into consideration as he began to make further adjustments to his prior estimate. *Id.* at ¶ 20.

d. He prepared at least five different versions of the estimate of the potential CSC shortfall, which he sent to various officials with IHS, the Department of Health and Human Services ("DHHS"), and the Office of Management and Budget ("OMB"). *Id* at ¶¶ 16, 21, 23-25.

### *Defendants Have Failed to Establish that the Attorney-Client Privilege Protects the Mr. Demaray's Global CSC Shortfall Estimates*

The purpose of the attorney-client privilege is to encourage full and frank communication between attorneys and their clients. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Such communication will allow an attorney to give reasonably informed professional advice to the client and promotes "broader public interests in the observance of law and administration of justice." *Id*. The attorney-client privilege only protects confidential communications between client and attorney

5

made in order to obtain legal assistance from the attorney, and is to be construed narrowly. *In re Grand Jury Subpoena Duces Tecum*, 697 F.2d 277, 278 (10th Cir. 1983). The privilege only extends to communications between client and attorney, not to the underlying facts, and a party cannot conceal a fact merely by revealing it to his attorney. *Upjohn Co.*, 449 U.S. at 395-96. The burden to establish that the attorney-client privilege exists rests upon the party asserting the privilege. *Grand Jury Subpoena*, 697 F.2d at 179.

There is substantial discrepancy between Mr. Demaray's deposition testimony that he prepared one CSC shortfall estimate on his own and his Declaration testimony that he took the advice of counsel into consideration when preparing numerous different versions of the CSC shortfall estimates. Courts are understandably concerned when presented with an affidavit from a witness that contradicts earlier deposition testimony, and the Tenth Circuit has struggled to decide what standard to apply when this occurs. In *Bohn v. Park City Group, Inc.*, 94 F.3d 1457, 1463 (10th Cir. 1996), the Court held that an affidavit that contradicted the plaintiff's deposition testimony should not be considered in evaluating whether summary judgment for the defendant should be granted. An earlier decision from the Tenth Circuit, however, found that an affidavit that contradicts earlier sworn testimony should be disregarded only if it "constitutes an attempt to create a sham fact issue." *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). More recently, the Tenth Circuit, when faced with this conflicting precedent, applied *Franks*, the earlier, settled precedent, over the standard set out in *Bohn*. *Kendrick v. Penske Transp. Svcs., Inc.*, 220 F.3d 1220, 1223-24 n.2 (10th Cir. 2000).

There are two reasons to reject Defendants claim that the global CSC shortfall information is protected by the attorney-client privilege. First, assuming that Mr. Demaray's testimony in his Declaration is correct, the March 2, 2005 global CSC shortfall estimate that he prepared would not

6

be protected under the attorney-client privilege because he prepared the estimate before he received advice of counsel from Ms. Beer on March 10, 2005. Second, even under the more lenient standard set forth in *Kendrick* and *Franks*, I must give controlling weight to Mr. Demaray's testimony at his deposition, which does not establish that he used any advice that he received from Ms. Beer when developing his CSC shortfall estimate. Defendants have failed to meet their burden to establish that the attorney-client privilege exists to protect the CSC shortfall calculations prepared by Mr. Demaray.

### *The Global CSC Shortfall Calculations are Protected by the Work Product Doctrine*

Rule 26(b)(3) codifies the work-product doctrine first recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 511-12 (1947). *Upjohn Co.*, 449 U.S. at 397-98. The work product doctrine protects against disclosure documents and other tangible things prepared in anticipation of litigation and for trial, but it does not protect facts contained within the work product. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995). The work product doctrine is broader than the attorney-client privilege, but is less absolute because it may be overcome by a showing of substantial need and undue hardship by the requesting party. *See Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1427-29 (3rd Cir. 1991). The party that asserts the work-product doctrine as a bar to discovery must establish that the doctrine applies. *Resolution Trust,* 73 F.3d at 266.

Rule 26(b)(3) specifically protects the "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation," and courts have recognized a difference between the protection accorded to fact work product and opinion work product. *Upjohn Co.,* 449 U.S. at 399 - 402; *Frontier Ref., Inc., v. Gorman-Rupp Co., Inc.*, 136 F.3d

695, 704 n.12 (10th Cir. 1998); *United States v. Adlman*, 134 F.3d 1194, 1204 (2nd Cir. 1998). The work product doctrine prevents the discovery of fact work product unless the party seeking discovery can demonstrate substantial need for the material and that the party is unable to obtain the substantial equivalent of the material by other means without undue hardship. *Frontier Refining*, 136 F.3d at 704. While opinion work product receives special protection not accorded to fact work product, the extent to which it is further protected is unclear. Some circuits have held that opinion work product is absolutely protected, while other circuits have held that it may be discovered only under compelling circumstances, and the Supreme Court has not ruled on this issue. *Upjohn Co.*, 449 U.S. at 401; *Frontier Ref.*, 136 F.3d at 704, n.12; *Adlman*, 134 F.3d at 1204.

Plaintiff first contends that the work-product doctrine only protects documents prepared by an attorney for a client in anticipation of litigation, and that the CSC shortfall estimates are discoverable because they were prepared by Mr. Demaray, who is not an attorney. [Doc. 137 at 14-15] This argument is belied by the language of Rule 26(b)(3) itself, which provides that documents prepared in anticipation of litigation "by or for another party or by or for that other party's representative" qualify as work product. Fed.R.Civ.P. 26(b)(3). The Tenth Circuit has recognized that the Rule "'protects materials prepared for any litigation . . . as long as they were prepared by or for a party.'" *Frontier Ref.*, 136 F.3d at 703 (quoting *FTC v. Grolier Inc.*, 462 U.S. 19, 25 (1983)). *See also* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2024 (2d ed. 1994) ("Accordingly the 1970 amendment expressly extends protection to documents prepared by or for a representative of a party, including his agent."). Thus, it is not necessary that the document be prepared by an attorney for it to be subject to protection by the work product doctrine.

Plaintiff also argues, almost in a *pro forma* manner, that the CSC shortfall calculations were

not "prepared in anticipation of litigation or for trial." [Doc. 171 at 12] Plaintiff ignores reality with this argument: Plaintiff filed this lawsuit in 2001, and in December of 2001 the case was stayed pending the Supreme Court's decision in *Cherokee Nation v. Leavitt*. Mr. Demaray prepared the calculations immediately after the Supreme Court handed down its decision in *Cherokee Nation*, and they were prepared for use in this litigation and other possible litigation that may result.

Plaintiff argued that Defendants waived the attorney-client privilege by circulating the CSC shortfall estimates too broadly.[3] [Doc. 137 at 12-13; Doc. 171 at 20-22] Plaintiff did not make a similar argument that Defendants had waived the protection of the work-product doctrine by circulating the CSC shortfall estimates too broadly. Perhaps Plaintiff did not assert waiver in this context because Plaintiff recognizes that the purpose of the work-product doctrine is different than the purpose of the attorney-client privilege. As the Third Circuit Court of Appeals explained, "the attorney-client privilege promotes the attorney-client relationship, and indirectly, the functioning of our legal system, by protecting the confidentiality of communications between clients and their attorneys." *Westinghouse Elec.*, 951 F.2d at 1428. The work-product doctrine, in contrast, "promotes the adversary system directly by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation." *Id.* Because the work-product doctrine serves to protect work product from falling into the hands of an adversary, to waive the protection of the work product doctrine a disclosure to a third party must enable an adversary to gain access to the information. *Id.* Plaintiff has not presented any evidence that an adversary gained access to Mr. Demaray's CSC

---

[3] Plaintiff asserted that the District of New Mexico rejected the argument that the attorney-client privilege attaches between different agencies of the federal government, citing *Wyoming v. United States Dept. of Agric.*, 239 F. Supp. 2d 1219, 1232 (D.N.M. 2002). As the title of the case suggests, it was the District Court of Wyoming that rejected this claim.

9

shortfall calculations. Further, other branches of the Executive Branch such as DHHS and OMB are not adversaries of the IHS for purposes of waiver of the work-product doctrine.

The Advisory Committee Notes to Rule 26 provide that "each side's informal evaluation of its case should be protected, that each side should be encouraged to prepare independently, and that one side should not automatically have the benefit of the detailed preparatory work of the other side." *See* FED. R. CIV. P. 26 advisory committee's notes, 1970 Amendment. Analysis of your opponent's case, or your own case, in anticipation of litigation, "is a classic example of work product, and receives heightened protection" under Rule 26(b)(3). *See Adlman*, 134 F.3d at 1196-97. The case relied upon by Plaintiff, *Wheeling-Pittsburgh Steel Corp. v. Underwriter Labs., Inc.*, 81 F.R.D. 8, 11-12 (N.D. Ill. 1978), is distinguishable because in that case defendant's employee claimed work product to protect discovery about the damages sought by defendant in its counterclaim against plaintiff. Defendants' estimates of what damages may be awarded to Plaintiff and the other putative class members if Plaintiff prevails on the liability issues are the type of information prepared in anticipation of litigation that are protected by the work product doctrine.

Like other evidentiary privileges, the protections provided by the work product doctrine may be waived by a party. *See United States v. Nobles*, 422 U.S. 225, 239 (1975); *Westinghouse Elec.*, 951 F.2d at 1428. If the Defendants had done what Plaintiff claims--asserted the impossibility of global CSC shortfall calculations as a defense to class certification while at the same time invoking the work product doctrine as a shield against discovery of their own global CSC shortfall calculations--Defendants would have placed the CSC shortfall at issue and would have waived the right to invoke the protection of the work product doctrine to the estimates prepared by Mr. Demaray. However, contrary to Plaintiff's contentions, Defendants have not asserted the impossibility

of global CSC shortfall calculations as a defense to the issue of class certification. Although Plaintiff filed a Motion for Class Certification [Doc. 26], Defendants never filed a response to Plaintiff's Motion, and Plaintiff subsequently withdrew the Motion. [Doc. 51] Defendants do not claim in their portion of the Joint Status Report that class certification is not warranted because damages for underpayment of the CSCs cannot be ascertained on a global basis, and have not asserted this defense in either their Opposition or Surreply. [Doc. 128 at 2-3; Doc 158 and 185] Thus, Defendants have not waived their right to assert that Mr. Demaray's global CSC calculations are protected by the work product privilege.

Plaintiff claims that even if the work product doctrine applies, Plaintiff has demonstrated substantial need for the information and that it is unable to obtain the substantial equivalent of the material by other means without undue hardship. This argument is unavailing for several reasons.

First, while there may be dispute about whether Mr. Demaray took the advice of counsel into consideration when he computed the global CSC estimates, there is no dispute that he adjusted the CSC shortfall data by taking into account his own opinions about the inherent problems with the CSC shortfall data. Thus, the CSC shortfall data constitutes opinion work product, which is either absolutely protected or may be discovered only under compelling circumstances. *See Upjohn Co.*, 449 U.S. at 401-02; *Frontier Ref.*, 136 F.3d at 704 n.12. Plaintiff falls far short of showing compelling circumstances.

Second, to the extent that the CSC shortfall data constitutes fact work product, the Plaintiff cannot establish that it has substantial need for the information because the requested information is not relevant to the class certification issues. As noted above, Defendants have not placed the CSC shortfall calculations at issue. Although Plaintiff belatedly asserts that the CSC shortfall estimates are

11

directly relevant to the Rule 23(b)(3) class issues of superiority and class management [Doc 171 at 7], Plaintiff makes no attempt to explain how the information is relevant to these issues. In fact, Plaintiff admits that Mr. Demaray's "final number is of less interest than the fact of the calculations and the nature of the data adjustments IHS made to get to its number." [Doc. 171 at 7 n.8] Yet Defendants have admitted that Mr. Demaray made the CSC calculations, and the nature of the data adjustments are not relevant to the class certification issues. Plaintiffs' request for the global CSC shortfall information is analogous to requests for information about case reserves established by an insurance company or reinsurance contracts, which are generally found to be not relevant and not discoverable. *See Fidelity and Deposit Co. of Md. v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996); *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 139 F.R.D. 609, 611-12 (E.D. Pa. 1991).

Third, Plaintiff cannot satisfy the undue hardship element. Defendants have admitted that they conducted post-*Cherokee Nation* litigation exposure estimates and have produced to Plaintiff the underlying data Mr. Demaray relied upon in preparing the estimates. Plaintiff may manipulate the data itself if it wants to compute the global CSC shortfall at this stage of the litigation, but it is not entitled to Defendants' preparatory work.

### *The Global CSC Shortfall Calculations are Protected by the Deliberative Process Privilege*

The deliberative process privilege allows the government to withhold documents and other materials that would reveal "advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The privilege has a number of purposes: to encourage the free flow of ideas by allowing government officials to debate alternative approaches in private; to protect

against premature disclosure of proposed policies before they have been fully considered or actually adopted by the agency; and to prevent the public from confusing matters merely considered or discussed during the deliberative process with those on which the decision was based. *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 866 (1980).

To qualify for withholding under the deliberative process privilege, the information must be both predecisional and deliberative. *Id.* at 866; *Petroleum Info. Corp. v. U.S. Dept. of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992). A document is predecisional if it was "'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." *Petroleum Info.*, 976 F.2d at 1434 (quoting *Renegotiation Bd. v. Grumman Aircraft*, 421 U.S. 168, 184 (1975). A predecisional document may include recommendations, proposals, suggestions and other subjective evaluations which reflect the personal opinions of the writer and which discuss the wisdom or merits of a particular agency policy or recommend new agency policy. Material is deliberative if it "reflects the given-and-take of the consultative process." *Coastal States,* 617 F.2d at 866. The key inquiry on the deliberativeness prong is whether disclosure of the requested material would tend to discourage candid discussion within the agency. *Petroleum Info.*, 976 F.2d at 1434.

Generally, factual information is not protected from disclosure under the privilege, while materials embodying deliberative opinions are. *Id*. However, the fact/opinion distinction is not always dispositive, because in some instances the disclosure of even purely factual information may so expose an agency's deliberative processes that the material should be held privileged. *Id*. The deliberative process privilege is centrally concerned with protecting the process by which agency policy is formulated, and when the material does not reveal an agency's mode of exercising policy-oriented judgment, the privilege does not apply. *Id*. at 1435.

13

Defendants have established that Mr. Demaray's global CSC calculations are both predecisional and deliberative, and thus qualify for withholding under the privilege. Mr. Demaray prepared his global CSC shortfall calculations to assist IHS in evaluating the policy implications of the *Cherokee Nation* decision. Defendants have estimated that the Supreme Court's decision in *Cherokee Nation* could potentially expose IHS to up to $100 million in damages. While I expect that Defendants may have been generous in estimating the extent of possible damages, the prospect of a large, multi-million dollar judgment might cause any organization to consider whether it must make adjustments to its policies. Indeed, Robert McSwain testified that IHS had to consider numerous issues post-*Cherokee Nation*, including it's ability to enter into future ISDA contracts and the terms of those contracts, IHS's budget preparation, the structure of the IHS appropriation, and the source of funds for payment of any judgments entered against IHS as a result of *Cherokee Nation*. Mr. Demaray's calculations are predecisional because they were prepared to assist IHS in making these determinations. *Maricopa Audubon Soc. v. U.S. Forest Service*, 108 F.3d 1089, 1093 (9th Cir. 1997).

The key inquiry in determining whether material is deliberative is whether disclosure of the information would tend to diminish candor within the agency. *See Petroleum Info.*, 976 F.2d at 1434. Mr. Demaray's calculations reflect his opinions about the inherent problems with the CSC shortfall data. They were prepared and were transmitted from a subordinate to a superior government officer, and reflect Mr. Demaray's opinions rather than the policy of IHS. Thus, Mr. Demaray's calculations are part of the give-and-take of the consultative process, and disclosure of the calculations would tend to discourage candid discussion within IHS.

The deliberative process privilege is a qualified privilege and, similar to the work product protection, can be overcome by a sufficient showing of need. *In re Sealed Case*, 121 F.3d 729, 737

(D.C. Cir. 1997). The need determination is to be made flexibly on a case-by-case basis, and the court is to consider factors including the relevance of the evidence, the availability of other evidence, the seriousness of the litigation, the role of the government, and the possibility of future timidity by government employees. *Id.* at 737-38. Plaintiff has failed to make a sufficient showing of need to overcome the privilege. While this litigation is certainly serious, the global CSC calculations are not relevant to the class certification issues. Further, Defendants have produced to Plaintiff the underlying data that Mr. Demaray relied upon in preparing the estimates. Finally, because "the process of selecting among alternative policies can be delicate and audience-sensitive, susceptible to distortions and vulnerable to fudging when the deliberators fear or expect public reaction," *Petroleum Info.*, 976 F.2d at 1435, sheltering information implicating Mr. Demaray's exercise of judgment about the underlying CSC shortfall data will ensure that other government employees are not dissuaded from giving frank advice and debating alternative approaches in private in the future.

### *Defendants Complied with Rule 34(b) When They Produced the CSC Shortfall Data in Paper Format*

Plaintiff has requested that Defendants produce their Area and Headquarters CSC shortfall data in computerized format, arguing that the paper records produced are not legible and that electronic documents contain metadata that will provide additional information such as additional columns, embedded formulas and comments. Concerning the complaint that the paper documents are not legible, Plaintiff did not attempt to resolve this issue with Defendants before raising it, and Defendants agreed to provide legible copies of any documents identified by Plaintiff. The production of electronic documents that may contain metadata raises many new discovery questions that are not answered by the current Federal Rules of Civil Procedure or case law. *See Williams v. Sprint/United*

15

*Mgmt. Co.*, 230 F.R.D. 640, 648-50 (D. Kan. 2005). Two principles from the Sedona Principles for Electronic Production appear to articulate a general presumption against the production of metadata unless the producing party is aware or should be reasonably be aware that particular metadata is relevant to the dispute. *See id.* at 650-52. Since Plaintiff did not specifically request the production of electronic documents, and waited until after Defendants had produced the records in paper format, Defendants appropriately exercised their option under Rule 34(b) to produce the paper records as they are kept in the usual course of business.

### *Conclusion*

Given the discrepancy between Mr. Demaray's deposition testimony and the testimony contained in his Declaration, Defendants have failed to establish that the CSC shortfall calculations performed by Mr. Demaray after the *Cherokee Nation* decision was handed down are protected by the attorney-client privilege. Those calculations are, however, a classic example of work product and are protected under the work product doctrine, and are also protected from discovery by the deliberative process privilege. Further, Plaintiffs did not request the Area and Headquarters CSC shortfall data in computerized format, which allowed Defendants the option to produce the records in paper format. Therefore, Plaintiff's Motion to compel discovery [Doc. 136] is denied.

IT IS SO ORDERED.

_William P. Lynch_
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

16