**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

PUEBLO OF ZUNI,

Plaintiff,

   v.            Case No. CV 01-1046 WJ/WPL

UNITED STATES OF AMERICA; et al.,

Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS

   THIS MATTER comes before the Court upon Defendants' Motion to Dismiss in Part for

Lack of Subject Matter Jurisdiction, filed May 24, 2005 (**Doc. 59**).  Defendants contend that

Plaintiff's failure to follow statutorily required procedures for exhaustion with respect to many of

the claims it seeks to raise in this action requires dismissal of those claims for lack of subject

matter jurisdiction.  Having considered the parties' briefs and the applicable law, I find that

Defendant's motion is well-taken and shall be granted.

### Background

   This case is a five-year old putative class action which seeks damages for the

Government's alleged failure to pay the full contract amounts specified in contracts between

Indian Tribes ("Tribes") and the Indian Health Service ("IHS") that were awarded under the

Indian Self-Determination and Education Assistance Act ("ISDA"), 25 U.S.C. § 450 et seq.

These ISDA contracts provide that members of the Pueblo of Zuni will deliver health care

services to its members that would otherwise be provided to Zuni's members by IHS.  The lawsuit

seeks damages for the Government's failure to pay certain "contract support costs" for ISDA contracts in fiscal years dating back to 1993.

There are at least two other related cases having a connection with this district.  One is Ramah Navajo Chapter v. Lujan, 112 F.3d 1455 (10th Cir. 1997), on remand to Ramah Navajo Chapter v. Babbit, 50 F.Supp.2d 1091 (D.N.M. 1999).  This case, assigned to Senior Judge C. LeRoy Hansen, was filed in this district over fifteen years ago as Civil No. 90-0957 LH/WWD and asserted claims of underpayment on contracts between a tribal organization of the Navajo Nation and the Bureau of Indian Affairs (rather than the Indian Health Service, which is one of the Defendants here).  The case is still pending.  Another case, Tunica-Biloxi Tribe of La. v. United States, Civ. No. 02-2413(RBW) (D.D.C.), was originally filed here, but was re-filed in the District of Columbia following an unfavorable decision by the Tenth Circuit in Cherokee Nation and Shoshone-Paiute Tribes v. Thompson, 311 F.3d 1054 (10th Cir. 2002).  When the United States Supreme Court reversed the Tenth Circuit in  Cherokee Nation v. Leavitt, 543 U.S. 631,125 S.Ct. 1172 (2005), the plaintiffs in Tunica-Biloxi sought to intervene in the Pueblo of Zuni case.  This Court denied the motion to intervene (Doc. 145) and the Tunica-Biloxi case remains in the District of  Columbia for pretrial and trial purposes.

## I.       Statutory Background

The ISDA's stated purpose is to allow Native American tribes to operate their own federal programs directly.  Under the ISDA, a tribe and the Secretary of Interior enter into a "self-determination contract," which incorporates the provisions of the model contract contained in the ISDA text.  See 25 U.S.C. § 450l(a), (c).

A.      The ISDA and Contract Support Costs

The Act specifies that the Government must pay a tribe's costs, including administrative

expenses. 25 U.S.C. §§ 450j-l(a)(1) and (2).  Administrative expenses include: (1) the amount

that the agency would have spent for the operation of the program, had the agency itself managed

the program, and (2) contract support costs." § 450j-1(a)(1) & (2).  The Act defines "contract

support costs" as other "reasonable costs" that a federal agency would not have incurred, but

which nonetheless "a tribal organization" acting "as a contractor" would incur "to ensure

compliance with the terms of the contract and prudent management." § 450j- 1(a)(2).  "Contract

support costs" can include indirect administrative costs, such as special auditing or other financial

management costs, § 450j-1(a)(3)(A)(ii); they can include direct costs, such as workers'

compensation insurance, § 450j-1(a)(3)(A)(i); and they can include certain startup costs,

§ 450j-1(a)(5).

Most contract support costs ("CSC") are indirect costs "generally calculated by applying

an 'indirect cost rate' to the amount of funds otherwise payable to the Tribe." Cherokee Nation of

Okla. v. Leavitt, 543 U.S. 631, 635 (2005)("Cherokee Nation").  Funding of indirect CSC is

based on a variety of factors, including specific terms of each negotiated ISDA contract, each

tribe's annual indirect cost rate, and amount of funding made available by Congress in the annual

IHS appropriation, and IHS policies and procedures for the calculation and distribution of indirect

CSC.  At issue in this lawsuit is the funding of indirect CSC under the individual self-

determination contracts.

Prior to 1998, Congress provided IHS with a lump-sum appropriation for the majority of

its operations, also providing recommendations on the amount that IHS should expend on CSC.[1]

Starting in the fiscal year 1998 appropriation, Congress explicitly limited the amount that IHS

could expend on CSC by imposing a "cap" directly in the appropriations act.

In March, 2005, the United States Supreme Court held that IHS could not defend against

a claim for breach of an ISDA contract on the basis of insufficient congressional appropriations,

"where Congress merely appropriates lump-sum amounts without statutorily restricting what can

be done with those funds. . . ." Cherokee Nation, 543 U.S. 631, at 637.  However, the Supreme

Court in that case did not address the liability of the Government when there is a capped

appropriation for the total amount of funds owed to all ISDA contracts.  Thus, it is doubtful that

the holding in Cherokee Nation would have an effect on ISDA contract disputes for contracts

during statutory cap years, although the I decline to make specific findings on this issue, since it is

not relevant for purposes of this motion.

B.    The Contract Disputes Act

The ISDA  provides for federal district courts to have original jurisdiction "over any civil

action or claim against the appropriate Secretary . . . for money damages arising under contracts

authorized by this subchapter."  25 U.S.C. § 450m-1(a).   The ISDA also provides that the

---

[1]  The Government's memorandum brief at 5-6 contains citations to pertinent supporting legislative documents.  See , e.g., Dep't of the Interior & Related Agencies Appropriations Act, 1994, Pub. L. No. 103-138, 107 Stat. 1379, 1408 (1993) (appropriating a lump-sum appropriation for IHS for fiscal year 1994: "[t]hat not to exceed $91,223,000 of the funds in this Act shall be available for payments to tribes and tribal organizations for indirect costs associated with contracts or grants or compacts authorized by the Indian Self-Determination Act. . . ."); H.R. Rep. No. 103-158, at 100 (1993) (recommending allocation of the lump-sum appropriation, including an allocation for CSC: "[t]he Committee recommends an increase of $26,000,000 to fund fully contract support costs as required by law."), S. Rep. No. 103-114, at 107 (1993) (recommending an increase in appropriations and expressing concern regarding the "shortfall in contract support").

Contract Disputes Act ("CDA") "shall apply to self-determination contracts." 25 U.S.C. § 450m-1(d). The CDA provides a mandatory administrative exhaustion scheme applicable to contract disputes between government contractors and the United States.  The first step in the CDA process is that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for decision." 41 U.S.C. § 605(a); see also 25 C.F.R. §§ 900.215- 900.230 (explaining the exhaustion requirement for contract dispute claims brought under the ISDA).  The contracting officer is required to issue a decision within a certain time frame, depending on the amount of the claim.  Under the CDA, failure of the contracting officer to issue a decision on a contract claim within the period required "will be deemed to be a decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim . . . ."  § 605(c)(5). The ISDA contractor may thereafter appeal a contracting officer's decision to:  (1) the Interior Board of Contract Appeals (within 90 days of the decision), 41 U.S.C. § 606; 25 U.S.C. § 450m-1(d), (2) the United States Court of Federal Claims (within 12 months of a decision), 41 U.S.C. § 609, or  (3) a federal district court (within 12 months of a decision), see id. § 609; 25 U.S.C. § 450m-1(a).  A contracting officer's decision on the claim "shall be final and conclusive and not subject to review by any forum, tribunal or Government agency, unless an appeal or suit is timely commenced as authorized by this chapter."  41 U.S.C. § 605(b).

In this motion, Defendants contend that some of the claims Plaintiff seeks to litigate have not been exhausted through the mandatory process set out under the CDA, 41 U.S.C. §§ 601 et seq.  Plaintiff contends that it has already presented its claims, and if there are some claims which are unexhausted, these claims need not be exhausted for various reasons.

## II.    Factual Background Relevant to Exhaustion Issue Raised in this Motion

Prior to filing this lawsuit, Plaintiff did submit contract disputes to a contracting officer. In April 2001, Zuni notified the IHS contracting officer regarding twenty-two contract disputes related to its contracts in effect during fiscal years 1993-1998.   The legal basis for these CDA claims, was that IHS allegedly had failed to pay the full amount of Zuni's indirect CSC need, as calculated under Zuni's indirect cost rate ("shortfall" claims).  For these claims, Plaintiff sought a total of $324,213.36 in additional funding.

Zuni then amended its CDA claims in September 2001 to include a claim of recovery for additional indirect CSC based on IHS's alleged failure to make adjustments in calculating the full amount of costs associated with the IHS programs under contract (referred to hereinafter as "miscalculation" claims).[2]  In other words, Zuni alleges that IHS failed to pay the full amount of indirect CSC incurred by Zuni's contracts even when using  the allegedly incorrect indirect cost rate. The amended claims brought the total amount of relief sought to $339,933.44.

Defendants' argument for nonexhaustion is based on the language in the First Amended Complaint and the language in the notices that were submitted to the contracting officer in April

_____

[2]   Defendants use the terms "Claim One" and "Claim Two" to refer to claims submitted to the contracting officer in April 2001, and September 2001.  According to the Government's description of the two categories of claims, "Claim One" claims assert that IHS should have awarded indirect contract support costs ("CSC") by calculating the contract's direct program base funding and multiplying that amount by Zuni's indirect cost rate in effect in that year.  For the "Claim Two" claims, Zuni alleges that IHS should have awarded indirect CSC only after first upwardly adjusting Zuni's indirect cost rate in effect in that year to account for the alleged underpayment of indirect CSC in connection with other, non-ISDA (and non-IHS) federal contracts.  The terms "Claim One" and "Claim Two" align with the Court's description of the claims as "shortfall" and "miscalculation" claims.

Plaintiff objects to Defendants' characterization of its claims, which will be discussed later, when the Court takes up the issue of whether the claims submitted to the contracting officer in September 2001 were preserved in the initial twenty-two claims submitted in April 2001.

and September of 2001.  Defendants maintain that Plaintiff exhausted only 30 claims, based on

twenty-two different ISDA agreements (Exs. A-D).  Defendants provide a helpful breakdown of

the contract disputes which were presented to the contracting officer – and thus exhausted – in a

chart which can be found in Defendants' memorandum brief at pages 9-10.  The chart contains

four columns. In the first column are twenty-two contract agreements identified by number and

fiscal year, ranging from FY 93 to FY 98.  The next column shows the amount claimed for each

of these agreements, all twenty-two of which were submitted to the contracting officer in April of

2001 (representing the shortfall category of claims).  The column immediately to the right

indicates the amounts claimed for seven out of the twenty-two contracts, submitted to the

contracting officer in September 2001 (under the miscalculation theory).  There were no contracts

after FY95 submitted to the contracting officer under the miscalculation theory.  The fourth and

last column represents the total amount claimed for each of the twenty-two contracts for both

theories.[3]

It appears as though Counts I and II in the First Amended Complaint fall into the

miscalculation category, since they allege that Defendants violated the ISDA in its failure to adjust

the indirect cost rates.  Counts III through VI fall into the shortfall category, since they refer to

Defendants' failure to "pay full contract."  Counts I, III and V assert statutory violations of the

---

[3] The chart created by Defendants is an accurate representation of the information
contained in the attached exhibits, with two exceptions.  By the Court's calculation of the
contracts and claims submitted in the chart presented by Defendants (including Ex. D, which is a
summary of the miscalculation theory claims submitted by Zuni under the Contract Disputes Act),
the count of exhausted claims is 29, not 30:  22 claims under the shortfall theory, and 7 of those
22 agreements submitted under the Claim Two theory.  Also, the contract number "242-93-
0072/FY94" claiming a total amount of $61,665.28 should read "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/FY94," based on
the notice pertaining to that contract in Ex. C.

ISDA.  Counts II, IV and VI allege breach of contract.  Count VII, an action for declaratory

relief, is not relevant for this discussion.

      Paragraph 1 of the First Amended Complaint ("Amended Complaint"), which was filed

December 12, 2001, states that "[t]he period covered by the First Amended Complaint is federal

fiscal years 1993 to the present."  Elsewhere in the pleading, Plaintiff states that Zuni seeks to

represent itself as well as "all tribes and tribal organizations contracting with IHS under the ISDA

between fiscal years 1993 to the *present*."  First Am. Comal., ¶ 53 (emphasis added).  Although

Plaintiff refers to periods from "FY 1993 through 1998" in Counts II through VI in the Amended

Complaint, it is clear that Plaintiff also intends to include contract disputes beyond 1998.[4]  Thus,

Defendants are correct that Plaintiff is seeking to litigate the following contract disputes which

have been not yet been submitted to the contracting officer as required under the Contract

Dispute Act:  all claims for relief arising out of the funding of its ISDA contracts in fiscal years

after 1998; and claims for relief arising out of the funding of its ISDA contracts in fiscal years

after 1995 under a miscalculation theory.  Defendants want to limit Counts I and II (the

miscalculation claims) to the eight specific claims presented by Zuni in September 2001 (seven

claims, by the Court's count); and also to limit Counts III through VI (representing the shortfall

claims) to the twenty-two specific claims presented by Zuni to the contracting officer in April

2001.

Legal Standard

      Subject matter jurisdiction must be decided prior to a resolution on the merits.  <u>Ruhrgas</u>

---

[4]  The First Amended Complaint refers to "causes of action" as opposed to "counts."
Count I does not contain any specific time frame – except for realleging previous paragraphs in
the pleading.

Ag. v. Marathon Oil Co., et al., 526 U.S. 574 (1999) (recognizing subject matter jurisdiction is a "threshold matter"). A court has wide discretion to allow affidavits or other documents to resolve disputed jurisdictional facts under Rule 12(b).  In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.  Sizova v. National Institute of Standards & Technology, 282 F3d 1320, 1324-25 (10th Cir. 2002). Thus, because the motion to dismiss is based on a lack of jurisdiction, there is no need to convert the motion to dismiss to one for summary judgment based on a defendant's reference to matters which are technically outside of the complaint.  Sizova, 282 F3d at 1324-25; SK Finance SA v. La Plata County, Bd. of County Commissioners, 126 F.3d 1272, 1275 (10th Cir. 1997).

For this reason, the Court rejects Plaintiff's argument that the exhaustion issue should be deferred pending a ruling on class certification.  See, Ruhrgas Ag v. Marathon Oil Co., et al., 526 U.S. 574 (1999) (recognizing that subject matter jurisdiction must be "established as a threshold matter") (citing Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 94 (1998)).  Further, the claims of putative class members, whether or not their claims have been exhausted, has no bearing on the question now before the Court: whether Pueblo of Zuni, as the named Plaintiff, has exhausted the claims they bring to this court.

Discussion

Plaintiff submits various rationales to support its position that Defendants' motion should be denied.  Some are more creative than others, but none have sufficient merit to withstand the motion to dismiss.

## I.      Whether Exhaustion under the CDA is Mandatory

The United States "is immune from suit save as it consents to be sued . . .  and the terms

9

of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. 584, 586 (1941) (citations omitted); see also Hercules Inc. v. United States, 516 U.S. 417, ----, 116 S.Ct. 981, 985 (1996).  The CDA operates as a limited waiver of sovereign immunity, subject to its two jurisdictional requirements: First, the contractor must have presented a written claim to the contracting officer.  41 U.S.C. § 605(a). Second, there must be either an actual contracting officer's decision on the claim or the contracting officer must have failed to issue a decision within the statutory time period, in which case the CDA provides that the contracting officer is deemed to have made a decision denying the claim.  41 U.S.C. § 605(c). Mendenhall v. U.S., 20 Cl.Ct. 78, 82 (Cl.Ct.,1990).

Case law supports Defendants' position that exhaustion under the CDA is a mandatory requirement before federal court jurisdiction can exist.[5]  See, SMS Data Products Group, Inc. v. U.S.,19 Cl.Ct. 612, 615 (1990) ("the Federal Circuit has repeatedly held that exhaustion under the CDA is prerequisite to Claims Court jurisdiction); Blinderman Const. Co., Inc. v. U.S., 39 Fed.Cl. 529, 558 (Fed.Cl.,1997) ("Both issues of liability and of damages should usually be resolved [by the contracting officer] before judicial review is sought"); U.S. v. Intrados/International Management Group, 277 F.Supp.2d 55 (D.D.C. 2003) (contracting officer's decision is the "linchpin" for judicial review of contract claims under the CDA . . . for the court to accept jurisdiction over [unexhausted counterclaim] without the defendants  exhausting the administrative protocol would frustrate the scheme of the CDA"); Thoen v. U.S., 765 F.2d 1110,

---

[5]  As Defendants point out, the Court of Federal Claims and its reviewing court, the U.S. Court of Appeals for the Federal Circuit interpret and apply the CDA almost exclusively.  Thus, case law regarding the CDA is more plentiful from those courts.  See, 41 U.S.C. § 607(g); 28 U.S.C. § 1295(a)(3) (United States Court of Appeals for the Federal Circuit has exclusive jurisdiction over appeals from either the Board of Contract Appeals or the Court of Claims).

1116 (Fed.Cir.,1985) ("Congress has determined that submission of a certified claim to the contracting officer in the first instance is a jurisdictional prerequisite to filing a suit in the Claims Court").

Thus, exhaustion under the CDA is a jurisdictional requirement. The mandatory nature of the exhaustion requirement makes sense from different vantage points. The language of the CDA sets a clear and unambiguous standard. Its statutory scheme of the CDA is extremely complex and internal deadlines for filing and appeals are time-sensitive. See, e.g., 41 U.S.C. § 605, 606, 607, 608, 609; Computer Products Intern., Inc. v. U.S., 26 Cl.Ct. 518 (Cl.Ct.1992) (failure of the contractor to appeal within statutory time limits, divests Court of jurisdiction). This suggests that the statute and its requirements should be strictly construed. See, e.g., Borough of Alpine v. U.S., 923 F.2d 170, 172 (Fed.Cir.,1991) (refusing to read into CDA exceptions to time limits and tolling provisions not authorized by Congress); see also, Gregory Lumber Co. v. United States, 229 Ct.Cl. 762, 763 (1982) (citation omitted).

In general, failure to exhaust is not excused where it is statutorily mandated. See, e.g., Booth v. Churner, 532 U.S. 731 at 741 & n.6 (2001) (regarding the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which requires a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions); McNeil v. U.S., 508 U.S. 106, 111 (1993) (declining to excuse nonexhaustion of claim brought under Federal Tort Claims Act, noting that courts "are not free to rewrite the statutory text"); McCarthy v. Madigan, 503 U.S. 140, 144 (1992) ("Where Congress specifically mandates, exhaustion is required," in PLRA case), citing Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 579, 109 S.Ct. 1361, 1371 (1989) (claims arising under Federal Savings and Loan Insurance Corp., ["FSLIC"]).

11

In <u>Irwin v. Dep't of Veterans Affairs</u>, 498 U.S. 89, 95-96 (1990), the United States Supreme Court extended equitable tolling available between private litigants to claims against the Government.  However, equitable tolling occurs in very limited circumstances, such as where the pleading filed during the statutory period was defective or where the plaintiff was induced or tricked by an adversary's misconduct into allowing the filing deadline to pass.  Courts are "less forgiving" in applying equitable tolling where a claimant failed to exercise due diligence in preserving his legal rights.  Courts are also reluctant to extend the tolling doctrine against the Government "more than it is employed between private litigants" because of the constraints of sovereign immunity on suits against the Government.  <u>Id.</u> at 96.  Zuni does not give any reason for its failure to exhaust which would fall into a category where equitable tolling is justified.

The exhaustion requirement before an agency, or "presentment," makes sense because of its purpose: it gives the agency an opportunity to resolve its contract disputes without litigation. <u>SMS Data Products Group, Inc. v. U.S.</u>, 19 Cl.Ct. 612, 615 (1990); <u>U.S. v. Unified Industries, Inc.</u>, 929 F.Supp. 947, 949 (E.D.Va.,1996) (CDA requirement that breach of contract disputes be presented to the designated contracting officer rather than filed in federal district court provides the agency with an opportunity to review and resolve the dispute short of litigation); <u>McCarthy v. Madigan</u>, 503 U.S. 140, 145 (U.S.1992) ("Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency").

## II.     Whether Nonexhaustion is Excused

Plaintiff contends that dismissal is not warranted on any of their claims.  As an initial matter, I note that Plaintiff has a tendency to raise new legal arguments in lengthy footnotes throughout the brief (e.g., Resp. at 7, 11 and 14).  It seems that an argument worthy of the

12

Court's attention would be developed in the text of a pleading and not tossed, almost like an afterthought, into a footnote half a page long.  If the technique was used in order to stay within the page limitations under local rules, Plaintiff could have requested an extension of the page limits.  The Court recommends that Plaintiff's counsel avoid this writing technique in future pleadings.

A.     Dismissal of "Future" Claims

First, Plaintiff has the notion that if there are unexhausted claims on which the statute of limitations has not expired, Plaintiff may still exhaust these claims and avoid dismissal.  Plaintiff finds it "odd" to dismiss claims that are either not before it, or to dismiss claims where the limitations period is still running.  There is nothing odd about dismissing claims that were not exhausted prior to December 12, 2001, the date the Amended Complaint was filed, since administrative exhaustion under the ISDA is a *prerequisite* to federal jurisdiction.  See, A & S Council Oil Co., Inc. v. Lader, 56 F.3d 234, 239 (D.C.Cir. 1995) (referring to CDA's jurisdictional exhaustion *prerequisites*) (emphasis added).  What the Court does find odd is Plaintiff's argument, which essentially proposes that this Court has no jurisdiction to find lack of jurisdiction over claims that are not yet exhausted, but may become exhausted at some time in the future.  See, Resp. at 6 ("It should go without saying that a Court has no authority to dismiss a claim that is not yet before it, much less dismiss a claim where the limitations period is still running").

Thus, while Plaintiff may certainly proceed to exhaust those claims which have not yet been exhausted and on which the statute of limitations has not expired, those claims would not automatically join the other exhausted claims under the Amended Complaint.  I do not find that

13

Plaintiff is prejudiced in any way by having to amend the complaint in this case in order be able to

litigate the newly exhausted claims in this action, or by having to file a new complaint with

separate claims once those claims have been exhausted.

B.     Statutory Authority to Bypass Exhaustion

Plaintiff next proposes that the express language in 20 U.S.C. § 450m-1 authorizes a tribal

contractor to bypass administrative exhaustion.  Section 450m-1(a) states that United States

district courts have "original jurisdiction over any civil action . . . arising under [the ISDA]."  That

section also states that a district court has "concurrent" jurisdiction with the United States Court

of Claims over "any civil action . . . for money damages arising under [the Contract Disputes

Act]."  Plaintiff contends that the first part of the section indicates that Congress intended to give

tribes an option to avoid administrative exhaustion and go directly to federal court, citing to two

federal cases for support.  See, Shoshone-Bannock Tribes of the Fort Hall Reservation v. Shalala

et al., 988 F.Supp. 1306 (D.Or., 1997) (Shosone I), and Cherokee Nation of Oklahoma v. U.S. et

al., 190 F.Supp.2d 1248 (E.D.Okla), rev. on other grds. by Cherokee Nation of Oklahoma v.

Leavitt, 543 U.S. 631 (2005)).

However, neither case cited by Plaintiff excuses the exhaustion requirement in this action.

Shoshone I involved contracts which were negotiated, but declined by the Government.  The

plaintiffs in Cherokee Nation sued for payment on contracts.  Neither court addressed an

exhaustion issue.  For both cases, the sole issue was determining the correct standard of review --

de novo, or deferential to the agency under the Administrative Procedures Act -- to be used in

civil actions brought under the ISDA.  The reference to a "bypass" around administrative

exhaustion alluded to in the cases (and relied on by Plaintiff in the footnote where this argument is

14

made) comes from 25 U.S.C. § 450f(b), which gives tribal contractors the option of avoiding

exhaustion and going directly to federal court when the Government *declines* a contract.  See, 25

U.S.C. § 450f(b) ("Procedure upon refusal of request to contract"); Cherokee Nation, 190

F.Supp.2d at 1258 ("Obviously, Congress intended to give the tribes the option to bypass the

agency review process").

     In Cherokee Nation, however, the Supreme Court made clear that because plaintiffs were

seeking money damages -- as Plaintiff is here --, the claims were properly brought under the

CDA.[6]  The court in Cherokee Nation went on to state that the standard of review would remain

de novo, even where claims are not brought under the CDA.  The court made this determination

by looking to § 450f(b), and concluding that "original jurisdiction" as stated in 450m-1(a)

envisioned a de novo standard of review.

     In the Zuni case before the Court, Plaintiff is seeking money damages, which under 450m-

1(a) is "subject to the provisions of the [CDA]."  Thus, there is no basis for Plaintiff to argue that

it is entitled to a "bypass" around exhaustion for claims Plaintiff has presented to the Court in this

case.

---

[6] Defendant in Cherokee Nation argued that the case really concerned a proper
interpretation of the ISDA rather than a money dispute, in order to avoid the de novo standard of
review that is called for under the CDA under 25 U.S.C. § 609(a)(3).  See,190 F.Supp.2d at
1255.  The court rejected that argument, finding that because the litigation centered around "how
much the defendants possibly owe in alleged damages . . . for failure to fulfill the terms of their
contracts," that plaintiffs were therefore seeking money damages. 190 F.Supp.2d at 1256-57.
    While § 609(a)(1) also allows a tribal contractor to file a claim directly in the U.S. Court
of Federal Claims in lieu of appealing the decision of the contracting officer to an agency board,
that section does not, by its language, obviate the need to submit claims to a contracting officer
before filing a lawsuit in federal court.  It simply eliminates need to appeal that decision for
agency review.

C.       Assertion of Similar Claim in April 2001 Presentment

Plaintiff next argues that the twenty-two "omnibus claims" already submitted to the

contracting officer in April 2001 covers any and all subsequently developed claims for breach

related to CSC funding under any of the twenty-two ISDA agreements claimed to have been

breached.   Based on this argument, Plaintiff naturally objects to Defendants' categorization of the

claims submitted in September 2001 into a separate category.

Under the CDA, all claims must be presented to the contracting officer.  41 U.S.C. §

605(a).   The Act itself "exempts no claims from contracting officer review").  SMS Data

Products Group, Inc. v. U.S.,19 Cl.Ct. 612, 615 (1990).  The CDA does not bar a plaintiff from

seeking an amount of damages that exceeds the quantum in the claim to the contracting officer.

The excess amount sought, however, must spring from the same certified claim.  Plaintiff may not

seek damages for a new claim -- that is, a claim not yet submitted to and decided by the

contracting officer.  SMS Data Products Group, Inc. v. U.S., 19 Cl.Ct. 612, 615 (1990).  A

district court, however, could have jurisdiction over an unexhausted claim where the issues in the

claims are based on the same set of operative facts.

Plaintiff argues that the allegedly unexhausted claims are "enlarged" claims in that they all

spring from the claims submitted in April 2001.  However, other than the fact that the later claims

are based upon some of the same contracts as those presented earlier, I find that there is

insufficient similarity in the set of operative facts upon which the later claims are based.

In Johnson Controls World Services, Inc. v. U.S., 43 Fed.Cl. 589, 594-95 (Fed.Cl.,1999),

the court addressed whether it had jurisdiction over a counterclaim that had not been presented to

the contracting officer.  The court found that the counterclaim arose from the same operative

facts only to the extent the counterclaim sought an identical amount of relief to the contracting officer's claim.  To the extent that the counterclaim sought a different amount of relief, that relief was based on a different set of operative facts, and the counterclaim could not be heard because it had not been first presented to the contracting officer.

The critical test for determining whether the operative facts are the same in later claims seems to be whether the scheme of adjudication prescribed by the CDA is undermined by the contractor's claim on appeal -- in other words, whether the claim circumvents the statutory role of the contracting officer to receive and pass judgment on the contractor's entire claim.  See, Diversified Energy, Inc. v. Tennessee Valley Authority, 339 F.3d 437, 445 (6th Cir. 2003) (quoting Cerberonics, Inc. v. U.S., 13 Cl.Ct. 415, 418 (Cl. Ct., 1987)).  The contracting officer must be afforded "adequate notice of the basis and amount of the claim." 26 Cl.Ct. at 945. Foley Co. v. U.S., 26 Cl.Ct. 936 (Cl.Ct. 1992) (discussed in context of Government counterclaim).

In Cerberonics, Inc. v. U.S., 13 Cl.Ct. 415, 417 (Cl.Ct.,1987), the court found that the complaint was based on same set of operative facts underlying the claim presented to the contracting officer, and therefore had jurisdiction, because the complaint filed in federal court sought the identical amount of relief as the claim which was presented to the contracting officer, and was denied.  The court found that, although the grounds for relief in the complaint were expressed differently than those stated in the claim to the contracting officer, the claims articulated in the complaint did not seek different categories of relief and that the "essence" of the claim remained the same: that plaintiff in that case was entitled, based on its contractual relationship with the defendant, to the same amount of compensation ($36,120) as had been sought in the administrative claim.  Id., at 417- 419.

In <u>Tunica-Biloxi Tribe v. U.S.</u>, No. 02-2413 (D.D.C.), the action which was originally

filed in this district, the federal district court in the District of Columbia relied on both <u>Johnson</u>

<u>Controls</u> and <u>Cerberonics</u> to determine whether certain claims sought to be litigated by the tribes

should be dismissed.  The court dismissed claims over contract disputes for fiscal years which had

not been submitted to the contracting officer, reasoning that "claims involving different fiscal

years involve different facts, which results in different amounts being claimed by each plaintiff for

each fiscal year." <u>Tunica-Biloxi</u>, Mem. Opin. at 11-15 (attached as Ex. E to Defts' Mot.).   On the

other hand, the court concluded that claims which were premised on an alternative theory (alleged

breach of the implied covenant of good faith and fair dealing) would not be dismissed, noting that

plaintiffs were not seeking "any additional sums of money based on the [alleged breach]." <u>Id</u>., at

11-15.

In this case, some of the claims which Defendants seek to have dismissed are from fiscal

years subsequent to any of those claims which were submitted to the contracting officer, either in

April or September 2001 (for example, any claims from contract disputes in fiscal years after 1998

to the present).  Other claims Defendants seeks to have dismissed are those from the same fiscal

years which may have already been exhausted in April 2001, but which request additional funding

based on a different theory of relief – IHS' alleged failure to correctly adjust the indirect cost rate.

For all of the claims which were not submitted to the contracting officer after FY 1998, I

find that these claims are not based on the same set of operative facts as those claims which arose

from fiscal years prior to 1998.  Contract disputes from fiscal years beyond FY 1998 will

necessarily concern facts as well as negotiated terms and amounts which differ from contracts

arising from previous years.  As for claims which were submitted in September 2001 to the

18

contracting officer for certain fiscal years, these claims request relief over and above the amounts requested in the contracts submitted in April 2001, based on a new legal basis underlying IHS' alleged deficiency.  One way to ascertain whether the new set of claims involves a distinct set of operative facts is to ask whether the denial of one claim or type of claim "would not necessarily preclude recovery on the other."  Johnson Controls, 43 Fed.Cl. at 593.  Here, it is obvious that Plaintiff could theoretically fail on the merits on a miscalculation theory, without necessarily precluding monetary relief on the shortfall claims.  Thus, claims of this type for FY 1993 and beyond, which were not submitted to the contracting officer in September 2001, are deemed not exhausted, and are claims over which this Court has no jurisdiction.

For the latter group of claims, Plaintiff maintains that the language used in the second wave of letters to the contracting officer in September 2001 discussing miscalculated rated damages proves that those claims are simply enlarged claims.  The letters state that Plaintiff "believe [that the damages relating to miscalculation] arise out of and are included in the same contract claim presented to you [in April 2001]."  Ex. C.  However, believing does not make it so. Later in the notice, Plaintiff described the legal basis for the contract dispute as IHS' failure "to account for the dilution in IHS' responsibility for indirect costs under the ISDA caused by the OIG's erroneous assumption in its rate that all agencies funding the Pueblo contribute to the Pueblo's indirect cost pool at the full OIG-determined rate. . . ."  Ex. C.  In the notice concerning the first twenty-two claims which were submitted to the contracting officer in April 2001, Plaintiff alleges a failure by IHS to pay each contract in full, but there is no mention about a failure to adjust indirect cost rate.  See, Ex. A.  Thus, the language in the notice on which Plaintiff relies supports that the claims submitted in September 2001 rest on a different set of operative facts.

19

Moreover, Plaintiff's submission of additional claims in September 2001 belies its "belief" that they had been preserved in the April 2001 submissions.

I agree with Defendants that the cases cited by Plaintiff (in one of Plaintiff's lengthy footnotes, Resp. at 11) cannot be read to skip the requirement that all claims must first be presented to a government contracting officer, and the requirement that the claim must state the basis and amount of the claim at the time the claim is certified to the contracting officer. Those cases present situations where the courts found that exhaustion was not required because the amended claims arose from the same set of operative facts; or because the contractor either made an error calculating damages, or learned of a fact that would increase the claimed damages by a certain amount. The increase in the damages amount requested by Plaintiff in the miscalculation claims cannot be attributed to an error in Plaintiff's calculation of damages, or from Plaintiff's learning of facts subsequent to the time the federal complaint was filed which would increase the damages amount. See, e.g., AAI Corp. v. U.S., 22 Cl.Ct. 541, 544 n.8 (Cl.Ct.,1991) (where contractor did not know or should have known of basis for justifying claim increase in amended complaint at time claims were submitted to Government contracting officer); J.F. Shea Co. v. U.S., 4 Cl.Ct. 46, 54 (1983) (additional facts developed through course of normal litigation which increase amount of claim).

The Court agrees with Defendants' position that the claims which are premised upon IHS' failure to adjust the indirect cost rate ("miscalculation claims"), some of which were presented to the contracting officer by Plaintiff for certain fiscal years, rest on a set of operative facts and legal theory which is different from the claims submitted to the contracting officer in April 2001. Therefore, Plaintiff has not persuaded the Court that those claims alleged by Defendants to be

20

unexhausted were preserved within the twenty-two initial "omnibus test claims," as they are

described by Plaintiff.  Thus, the later set of claims are not excused from the requirement that they

be submitted to the contracting officer prior to being litigated in this Court.

D.     Futility of Nonexhaustion

Plaintiff next argues that with regard to any of the allegedly unexhausted claims, an

attempt to exhaust those claims would be futile.  The argument itself is futile -- futility is simply

not available as an excuse for nonexhaustion.  See, Thoen v. U.S., 765 F.2d 1110, 1116 (Fed.Cir.

1985) (rejecting contractor's argument that presentment could be excused because submission of

CDA claim would be futile);  Made in the USA Foundation v. U.S., 51 Fed.Cl. 252, 255-56

(Fed.Cl. 2001) (refusing to excuse failure to exhaust under the CDA for Tucker Act claim on

futility grounds); Computer Products Intern., Inc. v. U.S., 26 Cl.Ct. 518. 525 (Cl.Ct.1992) (the

United States Claims Court should not allow exceptions or tolling provisions not authorized by

Congress); Borough of Alpine v. U.S., 923 F.2d 170, 172 (Fed.Cir.,1991) (refusing to read into

CDA exceptions to time limits and tolling provisions not authorized by Congress).

In an effort to bring its situation within an exception to the exhaustion requirement,

Plaintiff relies on Judge Hansen's unpublished memorandum opinion and order in Ramah Navajo

Chapter v. Lujan, No. 90-957 (D.N.M. 1993) (attached as Defts' Ex. F).  In the Ramah case,

plaintiff alleges that the BIA (as opposed to the IHS in this case) failed to provide the correct

statutorily mandated indirect costs to plaintiff.  The issue which was addressed in that decision

was whether unexhausted claims of putative class members should be dismissed.  Judge Hansen

decided that failure to exhaust is not a defense against unasserted claims coming within the class

"if exhaustion would be futile or would fail to provide adequate relief, or where an agency has

adopted a policy or pursued a practice of general applicability that is contrary to the law." Ramah, Mem. Op. at 3-4 (Doc. 95) (Defts' Ex. F).  Thus, the practical effect of the decision was that each member of the proposed class need not have exhausted its administrative remedies under the CDA prior to filing claims in federal court.

Judge Hansen's decision in Ramah is not binding precedent on this Court, nor does it provide definitive support for Plaintiff's position.  The issue before Judge Hansen presented itself in the context of a motion for class certification, considering exhaustion of claims of *other* class members.  It was not concerned with the allegedly unexhausted claims of the named plaintiff.  In fact, the Court noted that the named plaintiff had "exhausted its administrative remedies and is therefore properly before this Court. . . ."  Ramah, Mem. Op. at 2.   The issue before the Court here concerns only whether *Zuni* -- not putative class members -- has exhausted the claims it seeks to have reviewed in federal court.

The two cases on which the Court relied for its ruling in the Ramah opinion involved the statutory scheme under the Individuals with Disabilities Education Act ("IDEA"), which permits a reviewing court to excuse the exhaustion requirement when fulfilling the requirement would be futile or otherwise inadequate.  Ramah, Mem. Op. at 3-4 (citing Honig v. Doe, 484 U.S. 305 (1998) and Ass'n for Cmty. Living in Colo. v. Romer, 992 F.2d 1040 (10th Cir. 1993).[7]  The plain statutory language of the CDA and case law interpreting the provision does not appear to provide the same flexibility.  Besides, under Plaintiff's view of the nature of its claims, exhaustion would be unnecessary for virtually any and all ISDA contract dispute claims brought by Tribes.

---

[7]  In Honig, for example, the United States Supreme Court took note of legislative intent that parents should be able to "bypass the administrative process where exhaustion would be futile or inadequate." 484 U.S. at 326-27.

This does not make sense, given the strictness of the statutory scheme.

I also agree with Defendants that Plaintiff overreaches in its description of the basis for the United States Supreme Court's holding in the recent <u>Cherokee</u> decision as having "struck down the circular-based policy IHS employed in the 1990's." <u>See</u>, Resp. at 2, 11 n.8 and at 13. <u>Cherokee</u> focused attention on whether the Government was liable for contract support costs on individual contracts, and never mentioned "circular-based policies" – which appears to be a phrase coined by Plaintiff.  I am not convinced that this lawsuit seeks to make "systemwide reforms" to IHS policies such that administrative exhaustion should be excused, even if such flexibility were envisioned under the ISDA.   Accordingly, Plaintiff's argument of futility fails as an excuse for nonexhaustion.

E.      <u>Reliance as Excuse for Nonexhaustion</u>

Finally, Plaintiff advances the position that their reliance on the 1993 class certification Order in the <u>Ramah</u> excuses Zuni as well as other tribal contractors who would be putative plaintiffs in this case, from further exhaustion of their claims.  Apart from providing generic case law on tolling as a result of the filing of a Rule 23 class action, Plaintiff gives no legal basis regarding how it applies to this motion in this case.

Zuni seeks to represent itself as well as "all tribes and tribal organizations contracting with IHS under the ISDA between fiscal years 1993 to the present," <u>see</u>, First Am. Compl., ¶ 53. However, no class has been certified in this case, although there is a pending motion on that issue. <u>See</u>, Doc. 280.   Thus, whether or not Rule 23 of the Federal Rules of Civil Procedure tolls the running of the statute of limitations for purported members of a class who would otherwise be required to file their own claims, is not relevant for purposes of this motion.

This motion has nothing to do with exhaustion of claims by putative class members, and concerns only whether the Plaintiff has met the exhaustion requirements of the CDA.  Plaintiff can hardly be said to rely on the oblique argument that a class certification order in a *separate* case allows Plaintiff to forego exhaustion of their claims in *this* case.

### Conclusion

Plaintiff has presented various arguments to excuse its failure to present certain ISDA contract claims to the contracting officers.  These arguments are rejected for reasons given in detail above.  The Court finds that Plaintiff has properly exhausted claims presented under a shortfall theory for fiscal years 1993-1998, for a total of $324,213.35 (see, Defts' Exs. A and B), and claims under a miscalculation theory only for fiscal years 1993-1995, for a total of $15,720.09 (Exs. C and D).  I find and conclude that this Court lacks jurisdiction over any other claims which the Plaintiff has included for review in the First Amended Complaint.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss in Part for Lack of Subject Matter Jurisdiction, filed May 24, 2005 (**Doc. 59**) is hereby GRANTED, for reasons given above, as to the following categories of Plaintiff's claims:  (1) all claims for funding of its ISDA contracts in fiscal years after 1998; and (2) claims for additional funding of its ISDA contracts in fiscal years after 1995 which are based on IHS' failure to adjust Plaintiff's indirect cost rate to take into account the full amount of costs associated with the IHS programs under contract.

_____

UNITED STATES DISTRICT JUDGE